

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

May 15, 2023

**By ECF**
The Honorable Ronnie Abrams
United States Courthouse
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    <u>United States v. Michael Hild</u>, 19 Cr. 602 (RA)

Dear Judge Abrams:

      The Government writes pursuant to the Court's order of April 26, 2023 (Dkt. No. 164), to supplement the record in support of its restitution request with respect to Michael Hild and to respond to the defendant's objections to the proposed restitution order (Dkt. No. 162).

      At the outset, the Court should reject the defendant's claim that, because the Government took the position that restitution was not reasonably ascertainable ten days prior to sentencing, and the Government continues to rely on materials available at that time in support of its restitution calculation now, no victim is entitled to restitution. As the Government explained in its April 26 letter (Dkt. No. 163), the Government's acknowledgement in its sentencing submission that the Court lacked sufficient information ten days prior to sentencing to fix the restitution amount was prompted by the facts that (1) the defendant disputed the loss attributable to the fraud; and (2) the Government was unable, based on the information it had available, to determine whether the victims' expenses (as opposed to loss), and in particular their legal expenses, were in fact all compensable under the Supreme Court's most recent restitution framework. *See United States v. Afriyie*, 27 F.4th 161, 163 (2d Cir. 2022) (holding that the MVRA allows restitution for attorneys' fees "only for expenses associated with the criminal matters").

      In connection with the sentencing, the Court resolved the disputed issues as to loss, finding that the actual loss due to the fraud was at least $69.6 million. (1/27/2023 Tr. at 9). Subsequently, in the interest of avoiding further litigation and in recognition of the significant restitution obligation that would be imposed on the defendant and his co-conspirators due to the principal loss alone, the Government determined not to pursue restitution for ancillary victim expenses.

      Because the first issue had been resolved by the Court and the second issue had been resolved in the defendant's favor, the Government did not believe that there was a need to confer with defense counsel prior to submitting its proposed restitution order. While we regret any misunderstanding in this regard, the defendant's complaints regarding any meet-and-confer

process do not, as the defendant suggests, provide a basis for denying mandatory restitution to victims, nor, for that matter, does the defendant offer any claim of prejudice to him.

With respect to the issue now pending before the Court—that is, the determination of a "reasonable estimate" of the actual loss "based on the evidence before it," *United States v. Milstein*, 481 F.3d 132, 137 (2d Cir. 2007), the defendant now argues that the existing record is insufficient to establish the amount of the victims' losses and whether those losses directly resulted from the conduct forming the basis for the offense of conviction. As to the causation question, as the Government explained in its April 26 submission, the Second Circuit has held that in circumstances where loss is mitigated by recouped property, the use of fair market value is generally "the measure most apt to serve" the MVRA's statutory purpose of "restor[ing] a victim, to the extent money can do so, to the position he occupied before sustaining injury." *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006). "Fair market value is defined as the price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction" as of the date of measurement. *Id.* Although the Circuit has recognized that "other measures of value may . . . provide a more accurate measure of the 'full amount' of a victim's loss," such as where a market is "poorly developed or non-existent," *id.* at 116, the trial record in this case demonstrated, contrary to the defendant's repeated claims to the contrary, that there is a functioning market for these bonds.

To address the issue of loss amount, the Government has provided as exhibits to this submission trading records and additional factual detail to support the victims' principal loss figures. These records, along with the preexisting record, permit the Court to determine actual loss, by subtracting from the principal balance owed the victims the liquidation value and coupon payments of the collateral, and adding any carrying expenses, to determine the total principal shortfall. Indeed, the defendant makes no serious attempt to contend with the evidence in this case, which is far more than sufficient for the Court to reach a reasonable estimate of loss, as required under the MVRA. Because certain of these submissions contain commercially sensitive material, the Government has requested that they be filed under seal. In light of these materials and the record as a whole, the Government calculates the defendant's restitution obligation as follows:

| Victim | Principal Balance | Offsets for liquidation value and coupon payments | Carrying expenses | Principal Shortfall |
|---|---|---|---|---|
| Flagstar[1] | 68,285,685 | 54,678,509 | | 13,607,176 |
| Mirae[2] | 96,804,275 | 80,960,389 | 6,122,896 | 21,966,782 |
| ICBC[3] | 138,299,412 | 108,321,064 | | 29,978,348 |
| Customers[4] | 25,032,919 | 17,375,298 | | 7,657,621 |
| **Total** | | | | **$73,209,927** |

In addition, as reflected in the Government's submission of January 20, 2023, the Live Well estate is entitled to restitution in the amount of $253,850.25. (Dkt. No. 144, and Ex. E)

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: ___/s/_____
Scott Hartman
Assistant United States Attorney
(212) 637-2357

cc: Counsel of record (by ECF)

---

[1] Ex. 1 at 4-5, 6 (trade ticket).

[2] Ex. 2, at 4. Mirae had previously calculated its principal shortfall to be $22,964,797. In preparation for the filing of this letter, however, the Government requested additional documentation from the victims, and Mirae updated its calculation to $21,966,782.

[3] Ex. 3, at 6.

[4] Dkt. No. 144, Ex. D, at 4; Ex. 4, at 2