**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

June 5, 2023

**By ECF**
The Honorable Ronnie Abrams
United States Courthouse
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: United States v. Michael Hild, 19 Cr. 602 (RA)**

Dear Judge Abrams:

The Government writes pursuant to the Court's order of April 26, 2023 (Dkt. No. 164), in response to the defendant's May 29, 2023 submission on the question of restitution (Dkt. No. 174).[1]

The record before the Court is now more than sufficient to arrive at a "reasonable estimate" of the actual losses suffered by the victims of the defendant's scheme. *United States v. Milstein*, 481 F.3d 132, 137 (2d Cir. 2007). In his most recent submission, the defendant continues to pursue the meritless argument that he urged on the jury at trial and this Court in connection with sentencing: that the bonds in question were worth what he claimed they were worth and that if the victims had acted differently they would have suffered no loss. Put simply, that claim is pure fantasy. It is a fiction that was cooked up in the course of committing the fraud, advanced by the defendant during his perjurious trial testimony, and argued as a defense to the jury, which rejected it. Indeed, it finds no support in the trial record or the materials before the Court, all of which establish overwhelmingly that the lenders suffered substantial and unavoidable losses due to the defendant's brazen fraud.

In his latest submission, the defendant takes further issue with the substantial and detailed evidence that the Government has put forward to support the victims' restitution claims. None of these arguments has merit.

Take, for example, the defendant's critique of the evidence the Government has submitted to support Mirae's restitution claim. The defendant identifies two purported issues with these materials, specifically: "1) Although the January Troncoso Declaration says that Mirae received $75,363,701.26 from the 'sale of Live Well Bonds' (Dkt. 144-2 at 2), the May Troncoso Letter

[1] The defendant's May 29 submission also contained a motion for a new trial under Rule 33. The Government will separately respond to that motion on the schedule previously set by the Court.

says that Mirae received only $46,915,902.52 from the sale of the bonds (Mirae at 1), and does not explain what accounts for the difference; and (2) the attachments to the Troncoso Letter do not contain critical information about coupon payments from April through November 2019." (Dkt. No. 174, at 14).

As to the first issue, the difference between the $75 million (in the January Declaration) and the $46.9 million (in the May letter) is due to the fact that the January declaration was based on Mirae's bankruptcy court filings from 2021. At that time, Mirae continued to hold a number of bonds that had not yet been liquidated, and the valuations at that time were based upon mark-to-market values. *See* Exhibit A, at 29. As Mirae continued to hold the bonds, they decreased in market value, in part because they were paying down, but, importantly, those coupon payments were accounted for in the Government's May 15 submission. As to the second issue, we understand from Mirae's counsel that the coupon payments for the April to November 2019 timeframe were accounted for in arriving at the $96.8 million principal amount.

Hild's arguments regarding the Customers Bank restitution claim are similarly meritless. Hild claims that it is unclear whether Customers has adequately accounted for coupon payments received before Customers sold the bonds to itself, but Customers has reiterated as recently as today that, prior to the sale, it applied all coupons to reduce Live Well's obligations to the bank. Hild also argues that he is entitled to an offset for coupon payments received after Customers sold the bonds to itself, but once that occurred, Customers was on risk for any increase or decrease in their value. Certainly if the bank had suffered a further loss on the bonds after they were transferred, it would not be permitted to charge that loss to Hild. It is Hild, not Customers, who seeks to have his cake and eat it too.

As for ICBC, Hild suggests that somehow because there may have been some relationship between ICBC and BMO, the sale of the bonds to BMO was not for fair value. But as the Government's May 15 submission makes clear, ICBC received bids not only from BMO but also Citi, and, for 19 of the 21 bonds, the BMO bid was higher than the Citi bid. (Dkt. No. 168, Ex. 3 at 2).

Finally, with regard to Flagstar, it is difficult to discern the nature of Hild's objection. The Government's May 15 submission clearly indicates that the calculation of a $13.6 million shortfall includes an offset for coupon payments and the liquidation of the bonds of $54.6 million.

In short, Hild's objections to the restitution proof are specious and are contradicted by the evidence and the trial record, with which the Court is intimately familiar.

Hild's causation argument fares no better. Although he devotes two paragraphs of his submission to a Ninth Circuit case about cutting down trees in a national forest, tellingly, he says not a wit about *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006), the controlling Second Circuit precedent on this point. As the court in that case explained, in circumstances where loss is mitigated by recouped property, the use of fair market value, "defined as the price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction" as of the date of measurement, is generally "the measure most apt to serve" the MVRA's statutory purpose of "restor[ing] a victim, to the extent money can do so, to the position

he occupied before sustaining injury." *Id.* at 115. For the reasons explained above and in the Government's prior submissions, the Court now has ample evidence from which to ascertain the fair value of the bonds, and the degree to which they failed to cover the shortfall caused by the defendant's fraud.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s/
Scott Hartman
Assistant United States Attorney
(212) 637-2357

cc: Counsel of record (by ECF)