UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

— — —

FLAGSTAR BANK, FSB, a Federally
Chartered Savings Bank,

      Plaintiff,

  v.

LIVE WELL FINANCIAL, INC., a
Delaware corporation,
MICHAEL C. HILD, an individual,
ERIC ROHR, an individual, and
CHARLES DARREN STUMBERGER, an
Individual,

      Defendants.
_____/

Case No. 19-11512

Hon. Matthew F. Leitman

*(Hearing conducted
virtually using Zoom
Video Communications)*

<u>MOTION TO SET ASIDE DEFAULT JUDGMENT</u>

BEFORE THE HONORABLE MATTHEW F. LEITMAN
United States District Judge

Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan

Wednesday, March 5, 2025

*To obtain a copy of this official transcript, contact:*
*Robert L. Smith, Federal Official Court Reporter*
*(313) 234-2612 • robert_smith@mied.uscourts.gov*

*Flagstar Bank v. Live Well Financial, et al. • 19-11512*

*Motion to Set Aside Default Judgment • March 5, 2025*

**2**

APPEARANCES:

For the Plaintiff:          JOSEPH J. SHANNON, III
                            FAWZEIH H. DAHER
                            BODMAN, PLC
                            1901 St. Antoine Street, 6th Floor
                            Detroit, MI 48226
                            (313) 393-7549


For the Defendant
Michael Hild:               CHARLES J. BROWN, III
                            GELLERT, SEITZ, BUSENKELL & BROWN, LLC
                            1201 N. Orange Street, Suite 300
                            Wilmington, DE 19801
                            (302) 425-5800

For the Defendant
Charles Stumberger:         CHARLES DARREN STUMBERGER, Pro se
                            5400 Broken Sound Boulevard
                            Boca Raton, FL 33486
                            (561) 913-2565

TABLE OF CONTENTS

MATTER_____PAGE

ECF No. 127        Motion to Set Aside Default Judgment
                   Discussion with Mr. Stumberger........  6
                   Discussion with Mr. Shannon...........  9
                   Discussion with Mr. Stumberger....... 15
                   Discussion with Mr. Shannon.......... 21
                   Ruling by the Court.................. 24

EXHIBITS:_____ Offered_____Received

(No exhibits offered)

Detroit, Michigan *(Remote proceedings)*

Wednesday, March 5, 2025

at about 9:29 a.m.

— — —

(Court and Counsel present via Zoom Video Communications.)

THE LAW CLERK:  The United States District Court for the Eastern District of Michigan is now in session, the Honorable Matthew F. Leitman, United States District Judge, presiding.

The Court calls Case No. 19-11512, Flagstar Bank, FSB, v. Michael Hild, et al.

THE COURT:  All right.  Good morning.

Mr. Shannon, are you on for Flagstar?

MR. SHANNON:  I am, Your Honor.  And my associate, Ms. Daher, I think is on too, but she perhaps has not been promoted to a panelist.  She says she on but can't be seen so...  Oh, there she is right now.

Thank you, Scott.

THE COURT:  All right.  I can see you, Mr. Shannon, but your video has frozen.  I can hear you.

MR. SHANNON:  Oh, really?

THE COURT:  Yeah.

MR. SHANNON:  I can hear you and see you perfectly fine.  I'm surprised by that.  I'm just -- maybe I'm just

standing in one spot for once.

THE COURT:  What I see is you sitting there in a very pensive pose with your hand or your chin.

Mr. Brown, are you on for Mr. Hild?

MR. BROWN:  I am, Your Honor.  Good morning.

THE COURT:  Is Mr. Shannon frozen on your screen?

MR. BROWN:  Your Honor, you were occasionally freezing and not -- but I'm trying to find Mr. Shannon now.

MR. SHANNON:  Mr. Shannon is shaking his head back and forth.

MR. BROWN:  I saw some movement.  He's breaking up a little bit.  I can hear him fine.

THE COURT:  I hear Mr. Shannon fine too.  If anybody has a problem hearing or seeing me, let me know right away.

Mr. Stumberger, you are on for yourself?

MR. STUMBERGER:  Yes, Your Honor.

THE COURT:  Okay.  Welcome to everybody.  Thank you all for joining me.

We are here for a hearing on Mr. Stumberger's motion to set aside the default.  I have had an opportunity to review the motion, Flagstar's response, and Mr. Stumberger's reply, and I just have a couple questions that I would like to ask each side, and I'd like to start with my questions for you, Mr. Stumberger, if I could.

Mr. Stumberger, one of the points that you make in your motion is that I think it was October of '23 you were handed what you say was a stack of papers, and you say that the papers indicated they were expiring and should be disregarded.

Flagstar filed a proof of service indicating that what you were served was a copy of the summons, the complaint, and an order that I entered providing that the summons didn't expire until a week or ten days after it was served on you.

Can you help me understand why you thought the papers that were served on you were not active or operative or lack the force of law?

MR. STUMBERGER:  Sure, Your Honor.  My recollection was the papers handed to me on the street in New York, to what you just said, said they were expiring, and new ones would be sent to me.  So, like, I -- I didn't -- I didn't think that -- why would I focus on papers that were expiring in a week when new ones would be sent.  Like, I don't have any expertise in law or these legal proceedings.  I just read that they were expiring, and I would wait for the new ones to be sent.

THE COURT:  All right.  I haven't reviewed the packet in detail.  There is an expiration date for a summons, and I understand your point there, but where do you get the

idea that new ones would be sent?  I don't recall that being on any of the documents.

MR. STUMBERGER:  My recollection was there was language that a new set of documents would be provided to me.  That's my recollection.  That's why I disregarded what was handed to me.

THE COURT:  You indicated in your motion that you were told to disregard the papers.  Who told you that?

MR. STUMBERGER:  My attorney, Xavier (phonetic).  It was in passing.  He was walking away.  It was after the proceedings in downtown Manhattan.  I don't recall the exact language, but the tone and tenor at that moment was I read them -- I read the language saying they were expiring, new ones would be sent.  Xavier said something in passing, you know, don't worry about it.  I don't remember the exact language.  It all made sense because it said they were expiring, and new ones would be sent.

THE COURT:  All right.  Next topic is a totally different topic, the issue of a meritorious defense.

So one of the factors that I have to consider in deciding whether to set aside a default is looking at whether you have what is called a meritorious defense to the claims here.  Flagstar says you can't possibly have a meritorious defense here because, according to Flagstar, it is bringing civil claims against you based on the same conduct that you

admitted to in the federal court in New York when you pled guilty to committing crimes.

What is your answer to Flagstar's argument that you can't possibly have a defense to something that you pleaded guilty to?  Can you help me understand that.

MR. STUMBERGER:  Sure, Your Honor.  I want to be -- I want to proceed with caution in talking about the guilty plea and the allocution.  Obviously, this is all a massive perjury trap.

All I can say about the guilty plea is it was solely the advice of counsel at the time.  I was told explicitly there were no other options by Orrick, who was my counsel.  I can give you the reasons why they said that.  I still have my notes from August 2019 next to me right now.

What I wrote for the allocution was torn up and thrown out.  I was handed a piece of paper before the arraignment.  I read it.  I don't know who wrote it.  I have an idea who wrote it.  But the bigger picture here, Your Honor, is a guilty plea does not automatically establish guilt in the civil liability case.  My defense is the truth, better said, the facts of what happened.

What Flagstar has provided in terms of allegations and interrogatories are materially false, partially false, they admit truths, however you want to say it, and I dispute them.  So all I want to do is defend myself in court.

THE COURT:  All right.  Let me ask a related question.  Mr. Stumberger, are you saying that your position in this case will be different from what you said when you entered your plea?  In other words, you're telling me now, if I'm understanding you correctly, so I'm asking this as a question.  I understand you to be saying, look, Leitman, I said a bunch of things under oath to a United States magistrate judge in New York when I pleaded guilty.  I understand I said those.  I understand I was under oath.  But I'm telling you, Leitman, that in this case I'm going to say what is the truth and it is different from what was said in New York.  Is that what you're saying?

MR. STUMBERGER:  No.  I'm not going to commit perjury.  All I'm saying is what Flagstar has provided in terms of their allegations in the interrogatories are, again, false, partially false, omit truths, and I dispute them. That's all I want to do.  I'm not going to commit perjury and I'm not going to be forced to commit perjury.  I just want to defend myself against the allegations.

THE COURT:  Okay.  Let me turn to a couple questions for Mr. Shannon.

Mr. Shannon, you moved for summary judgment against Mr. Hild on the basis of collateral estoppel.  I denied that motion essentially without prejudice, but I denied it because I couldn't see exactly what it was that the jury necessarily

found.  Remember we talked about -- I said that when you move for summary judgment based on a jury verdict it's necessary to have the jury instructions and all of that other stuff. Here where there's a guilty plea it's not obvious to me we have that same problem.

Why isn't the safest course of action for Flagstar here to set aside the default and put together quickly a motion for summary judgment based on the plea transcript and see if that is a -- a winning motion.  Why isn't that the most sensible way to go?

MR. SHANNON:  All right.  I now know when you ask a question like that you are thinking it's the way we should do it, but I don't think safety is an issue here.  We do qualify for a default, and the efforts put forward to set aside that default are deficient, and so I think my motion for a default judgment is completely safe.  And the reason I say that is two things, and I totally disregard, and I don't expect you to worry about the procedure that Mr. Stumberger filed.  It is what it is, he's unrepresented, and I get -- I think he get some liberal interpretation based on that.

But he said two things.  He said in documents, which he hasn't identified, and the words "the papers essentially said they were expiring" and he can't identify the document so he can't show good cause.

And with respect to the meritorious defense, I get

that he -- that he wants to defend himself, but what he said in his response to this motion is "I have not shared what my defense will be."

And so I don't think there's any risk associated with entering a default judgment and I think it is the most efficient thing to did.  I understand the Court's caution with respect to a motion for summary judgment though.

THE COURT:  Well, let me go through with you the factors and think out loud with you and get your response.

So you guys correctly identify in your briefing the three factors that I have to consider.  The first one is whether the default was willful.  And what I have before me on that is -- you know, it is not obvious to me that this was willful.  Mr. Stumberger says that the packet of documents he received had expiration dates on them.  That much I think is accurate.  My order said I was extending the summons to X date.  A summons says it expires on X date.  Without a lawyer, it is plausible to me that a lay person could read that and say what expiring means is -- that a lay person could get that and not understand if you are served before the expiration date that's what matters.  That's at least plausible to me.

And then in your papers you say to me that there was an evasion of service.  That in your words -- maybe in one of your e-mails you said he was -- he happened to be not

there, you know, conveniently when we showed up to serve him. But the affidavits that you attach to your motion from the process server simply say we went to a place, his wife gave us an address, we went to the other address and he wasn't there.  That doesn't really speak to me about whether Mr. Stumberger was intentionally evading service, and he suggests that he wasn't.  And his conduct in this action since I have encountered him is somebody who seems to be diligently trying to participate.  He shows up every time we ask him to show up.  So at least in my mind there's a question about willfulness.  I want to take prejudice next, but what's your thought on that?

MR. BROWN:  So, first of all, Your Honor, I included the issues with respect to evasion of service more to add response to allegations that have been made that somehow Flagstar was trying not to include Mr. Stumberger.  I think his -- whether or not he was evading service or not is not relevant.

It is significant that I did have contact with Mr. Donaldson a long time ago and asked him to accept service, and that request was denied, which is Mr. Donaldson's right and Mr. Stumberger's right, and that's what caused us to ultimately serve him in the fashion which we did which was to catch him outside of court.  Okay.  So he was, in fact, served.

And if the answer is, you know, on unsubstantiated statements that the papers said that they should be ignored and a lawyer walking away -- and I wrote it down when he said it, it was his tenor and tone which led Mr. Stumberger to conclude that he could ignore the papers.

If that is all there is, then anytime a party receives a summons and a complaint, you know, merely deciding to ignore it would be sufficient to establish good cause because he decided to ignore it.  And this is a guy that's walking out of a federal courthouse where he is facing very substantial criminal charges.  It kind of boggles the mind that he thinks he should ignore a very, very large lawsuit based on the tenor and tone of his lawyer's statements. That's all I can say about that so --

THE COURT:  All right.  So the next -- the second factor is whether setting aside the default would prejudice the plaintiff.  And you guys have --

MR. STUMBERGER:  Your Honor --

THE COURT:  -- some general statements in your response to the motion that it would -- the case has been pending several years.  Basically, the primary prejudice you say is -- is delay.  The case law you cite on page 8 of your response talks about prejudice being tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion.

Isn't this a case where given Mr. Stumberger's guilty plea the risk of prejudice is less than it would be in an ordinary case?  In other words, at least according to Flagstar, Flagstar's position is that Flagstar has Mr. Stumberger locked down by virtue of his guilty plea, and according to Flagstar he has admitted under oath every fact that is necessary for Flagstar to prevail on its claims.

So granted that if I set aside the default there might be a bit more delay than otherwise, is there any meaningful risk in terms of evidentiary problems or other prejudice besides delay?

MR. SHANNON:  Can I make one comment before I answer that question because I asked Fawzeih to look something up for me while Mr. Stumberger was talking.  I just want to point out for the record that in previous pleadings Mr. Stumberger had identified a Jane Carbonaro as the person who told him to disregard the pleadings.  I just want to make that point.

To your -- to your point, Your Honor, I guess I would agree with you that of the three factors this is the one that perhaps most strongly favors Mr. Stumberger, but we are looking at an affidavit that says -- I guess it's not even an affidavit or declaration but a statement by Mr. Stumberger that says he has defenses which he has not shared.

Now, if I win a motion for summary judgment then this question is not relevant; but if I don't win a motion for summary judgment, I have to go back into discovery to find out what these defenses are.  I don't think the record that's in front of us supports the notion that Flagstar should have to spend that money to do so.

THE COURT:  All right.  Mr. Stumberger, let me come back to you for a second.  As Mr. Shannon noted, one of the factors that I have to consider is defenses to the claims. Do you have any defenses other than your position that what Flagstar says is not true?  In other words, do you have any legal defenses that are separate and apart from your position that Flagstar is just wrong on the facts?

MR. STUMBERGER:  I'm not -- I'm not equipped at this moment.  I'm trying to get a lawyer for this in terms of coming up with other legal defenses.  All I've done is read the allegations, and I took notes on every single one.  And at this point that's my defense to dispute and tell the truth about each one of them.

And just, Your Honor, for your sake, this case has been going on for five years -- maybe it's six.  Okay.  It should be noted that the intervener in this case, Scott Hartman, Jordan Estes, Brandon Racz, the U.S. government, has had my location -- physical location, telephone number, e-mail address, place of employment, hours

I'm working, when I'm at the supermarket, gas station.  They know my whereabouts every second of the day.

THE COURT:  Mr. Stumberger, let me stop you for a second.  There is an e-mail attached to Mr. Shannon's papers where Mr. Shannon did exactly what you said he should have done, which is reach out to Mr. Hartman to try to get your contact information.  This is Docket No. 129-4, pageID.4505. And Mr. Hartman said that all of his communications were with your lawyer.  Mr. Hartman directed Mr. Shannon to the lawyer and said, Mr. Hartman, that he was sorry he couldn't be of more help.

MR. STUMBERGER:  I don't know why that's my fault, Your Honor.  I don't know why that's my fault.  I don't know why I'm being punished for --

THE COURT:  Mr. Stumberger, I'm not saying that's your fault.  I'm saying you were making the point that what Mr. Shannon should have done was contact Mr. Hartman because he knew where you were, and I was just pointing out that that's exactly what he did.

MR. STUMBERGER:  Yep.

THE COURT:  I'm not saying that was your fault.

Mr. Stumberger, let me -- I'm trying to understand as a practical matter what this case would look like if it went forward.  If I set aside the default and if we ever get to some discovery, one of the things that would happen,

Mr. Stumberger, is you would be asked to and required to sit for a deposition.

MR. STUMBERGER:  Uh-huh.

THE COURT:  And during the deposition -- I am not Flagstar's lawyer, but my guess is that one of the things that Mr. Shannon would do would be to take your plea transcript and say to you, Mr. Stumberger, on this date, whatever it was, you appeared before a U.S. magistrate judge, and you said A, B, C.  And then Mr. Shannon will say to you, Mr. Stumberger, is that true?

Can you give me any sense as to whether you are going to suggest that any of the statements you made to the magistrate judge were not accurate?

MR. STUMBERGER:  Your Honor, I don't have the plea transcript in front of me.  I haven't even seen it.  I have asked for it.  I have asked for minutes or whatever, the transcript from the trial.  I don't want to speak out of line right now because I -- whatever I say has to -- you know, I can't dispute what I said under oath.

So I'm not prepared to -- I didn't know I was supposed to be prepared to tell the entire -- this is a public -- this is a public hearing, tell the entire world what my defense is.  I thought you were supposed to reserve that for when the trial happens.

THE COURT:  Mr. Stumberger, I'm glad you mentioned

that.  That's an important point and I wanted to talk to you about that.  The -- in a criminal case, what you're saying is in some cases true, that a criminal defendant subject to some issues about disclosing witnesses and stuff like that but a criminal defendant may not have to disclose to the United States government the defendant's defense to the case.

A civil case is very much the opposite.  A civil case has a whole -- a whole procedure where the defenses are set out at the very beginning in what are called the answer and affirmative defenses, and then there is discovery where the other side gets to ask you all sorts of questions about your defenses, and then the defenses are sometimes presented to the Court in what's called a dispositive motion before the trial.

So, again, with that, is there anything that you are not sharing with me because you don't think you have to?  So you've said very clearly that one of your defenses is Flagstar's wrong and their allegations are not true.  I understand that.  Are there any other defenses that you have because really this would be an important time to set them forth because in a motion to set aside a default, one of the factors I have to consider is a meritorious defense.  So is there anything else that you want to tell me?

MR. STUMBERGER:  Understood, Your Honor.  At this point -- up until this point I've only focused on the

allegations in the interrogatories.  I haven't even started trying to figure out other legal defenses.  I didn't know I was supposed to.  I thought you were just supposed to respond to the allegations similarly like Eric Rohr, for example. Eric Rohr -- this is all supposed to be joint and several -- he's disappeared from the case.  I -- somebody sent me his responses.  He pled guilty.  His response was I don't admit to any of this, and somehow he's disappeared from the entire case.  Hild was convicted.  Why am I -- my question is why am I the only one being singled out for this default judgment? Eric Rohr disappears, and it's kept private from the public. All right.  I don't understand what's going on with Hild. But I'm the only one with a default judgment.  I didn't realize I have to come up with other legal arguments.  I thought what was presented to me I'm supposed to respond to, and I've done that.

THE COURT:  All right.  A couple things, Mr. Stumberger, and I appreciate you seeking clarification, I think that would be helpful for all of us.  I don't know what happened to Mr. Rohr.  I haven't seen him in this case but perhaps there was a settlement or resolution that would explain that.

In terms of Mr. Hild, he has been defending this case and when somebody is here and defending there are no default proceedings.

And the reason there were default proceedings against you was that Flagstar believed that after serving you, you didn't respond, and then a default was entered. That's how we got here.

With respect to this idea of your understanding that you don't have to come forward with defenses, I think this makes clear why it's so important and really essential to have a lawyer if there's any possible way you can afford one. Because when somebody moves to set aside a default like you're doing, the basic rule that's been the law in what's called the Sixth Circuit, where I sit, for 40, 50 years is one of the things that the party needs to address when seeking to set aside a default is whether the party has a meritorious defense. So I understand that you as a lay person don't know that, but that's really one of the basics for the part of the proceedings where we are at now and why it is so important to try to get a lawyer, if at all possible, for you.

MR. STUMBERGER: I'm trying.

THE COURT: Is there -- is there anything else that you would like to say, Mr. Stumberger?

MR. STUMBERGER: No. My -- my objective is to get a lawyer somehow, some way. I can't afford it, but I'm trying to figure out other means to have a lawyer to defend myself. That is the plan.

THE COURT:  All right.  Mr. Shannon, anything else that you would like to say?

MR. SHANNON:  Yeah.  I didn't intend to create some sort of mystery with respect to Mr. Rohr.  He has settled, and that's why he is no longer in the case.

And I do want the record to be clear that the plea transcript was attached as an exhibit to the motion that Mr. Stumberger is responding to.

THE COURT:  It was -- Mr. Shannon, it was actually filed separately.  Do you know if it was separately served on Mr. Stumberger?

MR. SHANNON:  I don't know that.  I apologize, Your Honor.

THE COURT:  So it was -- it's Exhibit F to your motion, and the original filed motion has that as intentionally left blank.

MR. SHANNON:  Well, we will --

THE COURT:  It is filed on our docket, I read every sentence of it.  I just didn't know if that was separately served on Mr. Stumberger.

MR. SHANNON:  Fawzeih, do you know?

MS. DAHER:  It was, Your Honor.

THE COURT:  Okay.  Mr. Shannon, let me --

MR. SHANNON:  I want to bring to the Court's attention, for whatever reason it came up -- the ECF number

is -- it's like it double printed on it, but it is page 25 of the transcript itself.  And I just -- line 22, I just want to read this very short piece.  I know you've read it.  But, you know, "From 2015 until its bankruptcy in 2019, Live Well, at the direction of CEO Michael Hild, submitted inflated valuations to IDC knowing that IDC was publishing those valuations in its database verbatim and expecting that Live Well's lenders would rely on those inflated valuations."

THE COURT:  Yeah, I get it, I saw that.

Mr. Shannon, let me ask you a separate question, not on the issue of this motion.  But every time we hear from Mr. Stumberger he indicates that he doesn't have the means to retain counsel, and Flagstar's seeking a huge judgment here.  What about the idea of, if he's willing, take a creditor's exam of him and figuring out if he has any money, and if you decide he doesn't have funds trying to work out some sort of a resolution that gets him out of this case?

MR. SHANNON:  So I know we're now talking about potential settlement, Your Honor, but that was the basis of the settlement with Mr. Rohr, and Mr. Rohr did come up with some money but it was a relatively modest amount in relation to the claim based on his submission of his financial statements, which the bank accepted and reviewed and then accepted a settlement.

And even if Mr. Stumberger doesn't have any money

*Motion to Set Aside Default Judgment • March 5, 2025*

at all, he might be able to negotiate a deal where he consents to a modest judgment of some kind, a couple hundred thousand dollars, just to see if at a later date he does have money. Those are certainly possibilities, tough to negotiation without a lawyer on the other side though but --

THE COURT: So, Mr. Stumberger, one of the things that I was suggesting here -- let me try to translate it into non-legales, if I can. Sometimes in cases where there is a party that is suing another party for money, here Flagstar is suing you, if the party bringing the case is satisfied that the defendant doesn't have any assets, the party bringing the case may be willing to resolve the case for a lot less than it was originally demanding. And you have taken the position that you don't have any assets or funds.

Are you interested in sitting for what's called a creditor's examination where Flagstar would ask you questions under oath about your assets, liabilities, all of your financial position, and then seeing if you're able to persuade them that you are not collectible and then trying to negotiate a deal with that? Do you have any interest in that?

MR. STUMBERGER: I'm open to anything, Your Honor. I can tell you that the U.S. government real time knows exactly my financial condition. I have to report to them monthly. I have to pay them -- I'm paying them $10 a month

just to give you context.  There has been a $45 million restitution amount provided by Judge Abrams in New York. There's a million-dollar forfeiture.  The maximum amount that the government is taking from me is $10 a month.  So you want to have a conversation -- I'd be open to a conversation. That's the context of this.

THE COURT:  All right.  Just so we're clear, it wouldn't be kind of an informal conversation in terms of what I'm thinking; it will be a formal creditor's exam where, first, Flagstar would send you requests where you'd have to provide bank statements and stuff like that, and then you would appear for a deposition and you'd would be sworn under oath subject to penalty of perjury and they would ask you questions.

MR. STUMBERGER:  Yeah.  That's total -- I'm totally fine with that.  The government is doing it right now.  I'm in no different position to do it with Flagstar.

THE COURT:  All right.  Anything else, Mr. Shannon?

MR. SHANNON:  No, Your Honor Your Honor.

THE COURT:  Okay.  Look, with respect to the motion to set aside default, this is a challenging motion to decide. There are three factors, as Flagstar has indicated, under the *United Coin Meter* test, and I have to consider all of those. I have to also consider this against the backdrop that there's a very strong preference to resolve litigation on the

merits.

The first factor that I have to consider when I'm deciding whether there's good cause to set aside the default is whether the default was willful.  And I certainly understand's Flagstar position here that Mr. Stumberger, in Flagstar's words, received -- was properly served with a summons and complaint and, in Flagstar's words, made a decision not to participate in the litigation.  I understand and I respect that argument.

I see things a little bit differently based on the record before me.  Yes, it is true that Mr. Stumberg made a -- Mr. Stumberger made a decision that he didn't have to participate but, in my view, he has plausibly explained to me that that decision was based on a mistake, and at this point I'm persuaded that the mistake was one in good faith.  I can understand how somebody who's not a lawyer could look at a summons and an order, both of which list an expiration date, and believe that somehow this thing would be ending upon the expiration of those documents.  That, of course, is not accurate, but it is plausible, and I believe Mr. Stumberger when he tells me that.

And I'm persuaded also by Mr. Stumberger's conduct in this case since he has appeared.  He seems to me to be somebody who is very diligently protecting his rights and wants to very actively and aggressively oppose the claims

against him.  And I don't believe that his posture would have been anything different when he was served with the papers if he understood what those papers were.  So I don't find that his default here was willful.  To the extent that it was based on an intentional decision, it seems to me that was an error rather than a willful decision not to participate in the case.

The next factor is whether setting aside the default would prejudice Flagstar.  And as always, I appreciate Mr. Shannon's candor here.  I don't believe that setting aside the default would unfairly prejudice Flagstar or, indeed, cause Flagstar much prejudice beyond a delay here.

This is a unique case given the plea transcript and Mr. Stumberger's admission at least from Flagstar's perspective of the dispositive facts in this case.  So if the case needs to be litigated on the merits, Flagstar by its own account seems to be in a very strong position to do that whether the default is set aside or not.

The last factor is whether there is a meritorious defense.  This one candidly is the most difficult. Mr. Stumberger is on one hand insisting that Flagstar's allegations are wrong, are not truthful.  It seems to me it's going to be a real challenge to reconcile that with the plea transcript.  He hasn't identified any other legal defenses.

So this factor is a difficult one, and I acknowledge that, but given Mr. Stumberger's adamant denials here and the other two factors that I think weigh strongly in favor of setting aside the default, and in light of the strong preference for resolving claims on the merits, I'm going to grant the motion to set aside the default.

I'm going to permit Flagstar to file a motion for summary judgment right out of the gate based on the plea transcript. It seems to me that the motion that may be available --- and I want to be clear, I don't yet know how this plays out, the motion, I don't have a predisposed decision here, but I will allow Flagstar to file some sort of a motion based on collateral estoppel or some other theory. If Flagstar files that motion, I will do a couple things. I will prioritize a decision on it so that we can get clarity sooner rather than later on Mr. Stumberger's participation in the case and whether we're going to keep going or whether it's resolved. But in any motion like this, if it is based on collateral estoppel, I think it's very important that Flagstar lays out here's the elements of collateral estoppel, here's the elements of our claims against Mr. Stumberger, here are the facts that he admitted, and here's the law as to how you apply collateral estoppel to facts admitted during a guilty plea. That's the piece of the puzzle that will need to be made clear to me as we line all of this up. So if

Flagstar files that motion, I will prioritize it.

In the meantime, I do think it makes sense, Mr. Shannon, for you and Mr. Stumberger to speak directly to see if there's some path to setting up a creditor's examination and seeing if there's some resolution forward. If Mr. Stumberger is paying ten bucks a month to the government, they seem satisfied he doesn't have assets and maybe there's a sensible path forward.

So what I will do is -- if you want to file a motion for summary judgment, Mr. Shannon, I will give you 45 days to file that motion because my hope is that within these 45 days you and Mr. Stumberger can speak directly and see if you can move forward in some sort of settlement framework because I don't want you to be spending fees on this motion if there is a possibility of reaching a resolution along the lines that you reached with Mr. Rohr.

So what we will do I will -- let me do this. I think the sensible thing is I will set a status conference for 30 days from now. That will be the only thing we set.

In these next 30 days, Mr. Shannon, would you and Mr. Stumberger please speak, and when we have our next status conference you let me know if the settlement framework is moving forward. If it is, I will allow a little bit of time for that. If not, I will set a briefing schedule on a summary judgment motion and a schedule for the rest of the

case forward.

So the only thing we're going to do now is spend the next 30 days with you and Mr. Stumberger speaking to see if you can reach a common ground or at least start framework on that.

Mr. Shannon, do you have any questions?

MR. SHANNON:  Just -- I was going to ask Fawzeih, do we have Darren's telephone number?

MR. STUMBERGER:  The Court does.

MS. DAHER:  I don't think we have --

THE COURT:  Mr. Shannon, what is your e-mail? Mr. Stumberger, would you write this down, please.

MR. STUMBERGER:  Yes.

MR. SHANNON:  It is attached to the notice, but it is jshannon@bodmanlaw.com.

THE COURT:  So, Mr. Stumberger, when we get off this hearing would you please e-mail Mr. Shannon your phone number so that he can reach out to you and you guys can see if there are discussions to be had in this regard?

MR. STUMBERGER:  Yes, Your Honor.

THE COURT:  Okay.  Then we'll set a status conference in 30 days.

Mr. Brown, can you give me a very short update on what is going on with Mr. Hild's Second Circuit appeal?  Have they decided it yet?

MR. BROWN:  Your Honor, it's my understanding that has not been decided.  I think there was oral -- I know that there was oral argument on the appeal.  Off the top of my head, don't hold me to it, I would say it happened within the last 30 days.

THE COURT:  Okay.

MR. BROWN:  I don't have a whole lot of communication with Mr. Hild's criminal counsel, but whether I heard it directly from him or Mr. Hild, the estimate is kind of anyone's guess, I guess, as far as how long the Second Circuit would take to rule on the appeal.

THE COURT:  Okay.  Thank you.  I appreciate all of your time and thoughts this morning.  I will look forward to speaking to you guys it about 30 days.  Hopefully Flagstar and Mr. Stumberger can get this thing on a glide path that makes some sense to both of them and works for both of them.  If not, we'll set a schedule when we reconvene.  Thank you very much for your time and arguments.  I appreciate it.  Take care.

(Court recessed at 11:22 a.m.)

—   —   —

*C E R T I F I C A T I O N*

I, Robert L. Smith, Official Court Reporter of the United States District Court, Eastern District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing pages comprise a full, true and correct transcript taken in the matter of FLAGSTAR BANK, FSB, a Federally Chartered Savings Bank vs. LIVE WELL FINANCIAL, et al., Case No. 19-11512, on Wednesday, March 5, 2025.

*s/Robert L. Smith*
Robert L. Smith, RPR, CSR 5098
Federal Official Court Reporter
United States District Court
Eastern District of Michigan

Date:  03/06/2025
Detroit, Michigan