MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

bjacobs@maglaw.com
212-880-9536
#

COUNSEL
PIPPA HYDE***
KEFIRA WILDERMAN

RETIRED/PARTNER EMERITUS
PAUL R. GRAND

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

October 30, 2026

**VIA ECF**
Hon. Ronnie Abrams
U.S. District Judge
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square, Room 2203
New York, NY 10007

Re: *United States v. Hild*, 19 Cr. 602 (RA) (S.D.N.Y.);
*Hild v. United States*, 26 Civ. 6191 (RA) (S.D.N.Y.)

Dear Judge Abrams:

I represent Michael Hild in the above-captioned matters. I respectfully write to request that the Court consider as part of the record for Mr. Hild's Section 2255 motion Darren Stumberger's sworn declaration (including nine exhibits) dated October 13, 2026, which is attached to this letter. *See* Decl. of Darren Stumberger, *United States v. Stumberger*, 19 Cr. 608 (RA) (S.D.N.Y. Oct. 10, 2026) (Docket Entry 57) ("Supplemental Stumberger Declaration"). I further request that the Court grant Mr. Hild permission to file a supplemental brief of no more than 15 pages within 14 days of Mr. Stumberger's submission of his reply brief in connection with his habeas motion. (Presently, Mr. Stumberger's reply is due November 30, 2026.) The AUSA assigned to this case informed me that the request to file a supplemental brief was "premature" and did not otherwise consent or object to this request.

As my September 12, 2026, letter informed the Court (Docket Entry 288), Mr. Stumberger's initial Section 2255 filing included a brief declaration verifying his memorandum of law, which stated that a more substantial declaration would follow. (Mem. of Law at 2, *United States v. Stumberger*, 19 Cr. 608 (RA) (S.D.N.Y. Sept. 10, 2026).) Mr. Stumberger has now filed a detailed, 72-paragraph sworn declaration with nine exhibits that addresses matters at the heart of Mr. Hild's petition and the government's opposition.

Among other things, Mr. Stumberger now swears to the following:

*The valuations were defensible.* Mr. Stumberger swears that the 2015 revised valuation methodology was "grounded in recognized financial concepts," that he "did not understand the approach to be arbitrary," and that it produced values "that I believed were correct and defensible." (Supp. Stumberger Decl. ¶¶ 7, 9.) As to the assumptions used in early 2017, he swears that they "were within the range of assumptions I considered professionally tenable" and that he "never believed that a line had been crossed." (*Id.* ¶ 16.) He also states that, in mid-2017, valuations were held "static" on the advice of Live Well's outside counsel, that he was present when that advice was given, and that Mr. Hild froze the valuations on that advice. (*Id.* ¶ 19.) These statements go directly to Mr. Hild's intent and contradict the government's theory that the marks were knowingly fraudulent. (Docket Entry 282 at 16-18.) Mr. Stumberger specifically explains how he discussed "whether a line had been crossed" with counsel—at a meeting he did not disclose to Mr. Hild—and was "not told that any crime was being committed." (Supp. Stumberger Decl. ¶ 18.) Mr. Hild could not have conspired with someone who did not believe he was committing a crime and confirmed that understanding with counsel. Still, at trial, the government told the jury that Scenario 14 was "the code name for the fraud" and that its prices were "jacked up." (Trial Tr. 25-26.) The jury never heard that the valuation freeze was implemented on the advice of counsel, because Mr. Hild's trial counsel failed to meet the deadline to provide notice of an advice-of-counsel defense. (Docket Entry 275 at 3.)

*Mr. Stumberger now disavows his admission of a fraudulent agreement.* At trial, Mr. Stumberger testified that he acted "with other people" and identified Mr. Hild as a person with whom he engaged in wrongful conduct. (Trial Tr. 51-52.) Mr. Stumberger now swears that when asked at his plea whether he had entered into an agreement with another person, he "truthfully answered, 'No, your Honor,'" and changed his answer only after his lawyer, with the microphone muted, told him he would be "taken into custody immediately." (Supp. Stumberger Decl. ¶ 43.) He swears that he "did not believe" his allocution statements about inflated valuations "to be accurate at the time," and that his remaining answers did not reflect "my own beliefs." (*Id.* ¶¶ 42, 44.) The government's contention that Mr. Stumberger has not recanted (Docket Entry 282 at 28) does not survive these sworn statements.

*Mr. Stumberger's statements undermine the testimony of other government witnesses.* Eric Rohr, Live Well's CFO, testified at trial that Mr. Hild gave no "market basis" for the early-2017 increases and that he "realized that this was wrong." (Trial Tr. 1167-68.) Hayden Novikoff likewise testified about "prices that I submitted that I knew were not . . . connected to any market conditions." (Trial Tr. 807-08.) Mr. Haddock testified that he was "[a]bsolutely surprised" that the marks had not changed in two years, and that he knew "enough about the bond market and investments to know that any type of investment medium is not going to be stagnant for a period of two years," which made him concerned. (Trial Tr. 1612.) Mr. Stumberger now swears he and Mr. Hild were advised by counsel, at a meeting where he "was present," to hold the valuations steady, and that Mr. Hild froze them on that advice: "Murphy & McGonigle advised the company to hold Live Well's reported valuations unchanged for the foreseeable future. Based on that advice, Hild directed our team to freeze the valuations, and I had no role in setting or authorizing the freeze." (Supp. Stumberger Decl. ¶ 19.) Mr.

Stumberger's present statements would have significantly undermined all of this testimony and more.

*The government shaped his account.* Mr. Stumberger swears that during a 2019 proffer, when he explained that he could not agree with a characterization he believed was inaccurate, "one of the government's attorneys told me my account was wrong and that I had to change my answer." (Supp. Stumberger Decl. ¶ 32.) He swears that he thereafter "continued to conform my account to the government's theory," even though his statements "were not candid and did not reflect my own understanding." (*Id.* ¶ 33.) Government representatives told him he was "nailing it" and doing what was necessary "not to get charged." (*Id.* ¶ 34.) His counsel repeatedly told him that "the government was satisfied" and did not review the "accuracy of what I had said" or discuss his own risks. (*Id.*) After pleading guilty, he attended "more than ten preparation sessions" with prosecutors and agents to prepare his testimony against Mr. Hild. (*Id.* ¶ 48.) These statements rebut the government's claim that his trial testimony "was appropriately limited to his knowledge at that time," (Docket Entry 282 at 29), and they bear directly on whether the government knew or should have known that his testimony was inaccurate and coerced. *See United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991) ("Where the prosecution knew or should have known of the perjury, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." (citations omitted)). These statements also raise the concern that the government did not comply with its *Brady* obligations, as the government never disclosed to Mr. Hild that the prosecutors had told Mr. Stumberger he was "wrong" and had to "change [his] answer," much less the specifics of Mr. Stumberger's original answer with which the government disagreed. If the government obtained Mr. Stumberger's cooperation by pressing him falsely to conform his account to its theory, there is also every reason to examine whether the same methods were used with its other cooperating witnesses.

*The Foster/Bloomberg evidence would have mattered.* Mr. Stumberger swears that the government never raised Dan Foster's relationship with Bloomberg during his proffers, that he first learned of it on September 10, 2025, and that, had he known of it, he would not have pleaded guilty. (Supp. Stumberger Decl. ¶¶ 35, 56-57, 61.) These sworn statements provide substantial additional support for Mr. Hild's claim that competent investigation of the Foster/Bloomberg relationship by counsel before trial could have materially altered his defense, including the cross-examination of not only Mr. Stumberger but all the government's witnesses, and the challenge to the government's valuation evidence. (Docket Entry 275 at 27-37.)

* * *

Mr. Stumberger's recent filings fundamentally undermine his trial testimony against Mr. Hild.

- At trial, Mr. Stumberger testified that he pleaded guilty "[b]ecause I'm guilty" (Trial Tr. 222; *see id.* at 51); he now swears that he "did not commit fraud" and pleaded because of threats and a script he "did not write or believe in" (Supp. Stumberger Decl. ¶¶ 62-63).

- At trial, he testified that he was truthful with the government apart from personal matters and had no "promises [or] guarantees" (Trial Tr. 221-23, 556); he now swears that he conformed his account to the government's theory under pressure (Supp. Stumberger Decl. ¶¶ 32-33, 38).

The government relied on that testimony throughout its summation, telling the jury it would have to believe that Mr. Stumberger was "in fact not guilty" to acquit. (Trial Tr. 2123; *see id.* at 2152, 2165; *see also* Sentencing Tr. at 7-8, *United States v. Stumberger*, 19 Cr. 608 (RA) (S.D.N.Y. Oct. 6, 2023) (Docket Entry 42) (government emphasizing Mr. Stumberger's importance "in terms of thinking about how to present the case to the jury").) Mr. Stumberger's filing thus supports Mr. Hild's habeas motion in its entirety.

To the extent a supplemental brief (and this letter and its attachments) is viewed as an amendment of the petition, it bears noting that motions to amend habeas petitions are generally controlled by Federal Rule of Civil Procedure 15(a), which "requires that leave to amend 'shall be freely given when justice so requires.'" *Littlejohn v. Artuz*, 271 F.3d 360, 362 (2d Cir. 2001) (quoting Fed. R. Civ. P. 15(a)). That standard is easily met here where the Supplemental Stumberger Declaration is new, sworn, and directly responsive to the government's primary arguments.

As noted above, Mr. Hild respectfully requests leave to file a supplemental memorandum of no more than 15 pages to be due within 14 days of Mr. Stumberger's reply brief, to address Mr. Stumberger's filings, the further issues raised by the government's response, and arguments made in Mr. Stumberger's reply. Mr. Hild also reiterates his request that the Court grant his petition or, at a minimum, order discovery and an evidentiary hearing.

Respectfully submitted,

*/s/ Brian A. Jacobs*

Brian A. Jacobs

cc: All counsel (by ECF)

Application granted. Mr. Hild may file a supplemental brief within 14 days of Mr. Stumberger's reply brief. The Government shall file a response no later than 14 days after Mr. Hild files his brief.

SO ORDERED.

Hon. Ronnie Abrams
November 2, 2026